NEWBERRY *v.* CITY OF DETROIT.

1. TAXATION — SPECIAL ASSESSMENTS — PAVING — PARKS — MUNICI-
    PAL CORPORATIONS.
    Only properties owned by municipalities for governmental
    purposes are exempt from special assessments for public im-
    provements.[1]

2. SAME—DETROIT CHARTER—EXEMPTION OF PARK FROM SPECIAL
    ASSESSMENT.
    A special assessment for paving a public street fronting on a
    park, under the charter of the city of Detroit, is invalid un-
    less it is based on and includes the frontage of the park.

Error to Wayne; Murfin, J. Submitted November 16,
1910. ( Docket No. 61.) Decided February 1, 1911.

Assumpsit by Helen H. Newberry against the city of
Detroit for the amount of taxes paid under protest. A
judgment for plaintiff on a verdict directed by the court
is reviewed by defendant on writ of error. Judgment re-
duced and affirmed.

*Walter Barlow (P. J. M. Hally,* of counsel), for ap-
pellant.
*Miller, Smith, Paddock & Perry,* for appellee.

MCALVAY, J. This litigation arose on account of a
claimed illegal paving assessment made by defendant
against certain lots owned by the plaintiff, and abutting
upon Edison avenue in the city of Detroit, to pay the cost
of paving such avenue. Voigt Park occupies the entire
block on Edison avenue, between Second and Third ave-
nues. From the stipulated facts in the case it appears:

"That on or about September 3, 1907, * * * the
common council of the city of Detroit passed a resolution

---

[1] As to liability to local assessments for benefits of property ex-
empt from general taxation, see note in 18 L. R. A. (N. S.) 451.

to pave Edison avenue, in said city, from Second avenue to Hamilton boulevard, and that the lots and parcels of real estate fronting the portion to be improved were declared to be and constituted the local assessment district. * * * That in and by said roll the whole cost of such paving was assessed against the lots fronting on said Edison avenue between Second avenue and Hamilton boulevard (except for the cost of paving the intersections of cross-streets) and no part of such costs were assessed against Voigt Park."

The stipulation shows that this was a public park, belonging to the park system of the city, fronting upon and extending along Edison avenue about 820 feet, and that the lots of plaintiff which abutted upon Edison avenue, as described in the declaration, were assessed in the sum of $8,446.96. Plaintiff on February 9, 1909, petitioned the common council to refer the assessment roll back to the board of assessors for revision and correction, because the whole cost of the paving was assessed against the lots, and no part against Voigt Park with a frontage of 820 feet, claiming that the park should be assessed, and that her assessment was out of proportion to the benefit conferred, and that the assessment roll was contrary to law. This petition was denied. Later, when the assessments had become payable and a lien upon these lots, plaintiff, under protest in writing, paid the sum so assessed in full, February 27, 1909. On March 2, 1909, she presented to the common council in due form her claim for the repayment to her of the sum of $8,446.96, the amount paid. This claim was denied. This suit in assumpsit was brought by her to recover that amount. At the close of the case both parties asked for an instructed verdict. The motion of plaintiff was granted, and a judgment was entered against the city in her favor for the full amount of the sum paid. The defendant upon a writ of error brings the case here for review, asking a reversal upon errors assigned.

The principal reason upon which defendant relied for a directed verdict in its behalf was—

"Because Voigt Park was not assessable for paving Edison avenue, and that the property of the private parties fronting on said avenue so paved was properly assessed for the (entire) cost of said pavement."

This is the material question to be considered.

This assessment was made under authority of the charter of the city of Detroit, which reads:

"For the purpose of such assessment, the lots and parcels of real estate situated on said street, and fronting the portion thereof ordered to be improved, shall constitute one local assessment district;" * * * the cost and expense of the paving to be assessed according to frontage. Detroit Charter 1904, §§ 266, 267, pp. 182–184.

Defendant, admitting that the authorities apparently are not in harmony upon the material question presented, urges that, in those States where special assessments against real estate owned by municipalities are declared valid, there was constitutional or statutory provision authorizing such assessments, but that in this State there is no such authority, and that this court has so held in the case of *City of Big Rapids* v. *Supervisors*, 99 Mich. 351 (58 N. W. 358). It must be conceded, if that case decides all that is claimed for it, defendant's contention is correct. This court said in the opinion:

"The general tax law of the State exempts from taxation all public property belonging to the United States, to this State, or to any county, city, village, township, or school district within this State save lands purchased at tax sales and still held by the State. The Constitution of this State contains no provision upon the subject, and in this respect differs from the Constitutions of some of the States. * * * Aside from express exemptions there are also exemptions implied by law. Implied exemptions exist where property is owned and held by the State, its political subdivisons, and its municipalities for governmental purposes"—citing Cooley on Taxation (2d Ed.), p. 172.

This authority, which is relied upon in the foregoing extract from the opinion, in the same paragraph says: "But a municipal corporation may hold property,

not for governmental purposes, but for the mere convenience of its people," which the text-writer states has been held "not presumptively excluded from taxation when it is restricted to special assessments." From this we must conclude that the intention of the court was to be in harmony with the authorities cited, and that only properties owned by municipalities for governmental purposes were included in its holding as exempt.

Construing the language of the charter relative to assessments for paving, we do not find any exemption of public grounds. In cases which hold the extreme doctrine that no property of the State is exempt from special assessments, and also those which hold that certain properties belonging to the public are exempted by statute from taxation, the decisions are harmonious in holding that the exemptions apply "only to the taxes mentioned in the general tax law." This rule was recognized by this court in *City of Big Rapids* v. *Supervisors, supra.* We cite some of the leading authorities which favor the rule: Cooley on Taxation, §§ 458, 572, 573; *City of San Diego* v. *Irrigation District*, 108 Cal. 189 (41 Pac. 291, 35 L. R. A. 34, note); *County of Adams* v. *City of Quincy*, 130 Ill. 566 (22 N. E. 624, 6 L. R. A. 155); *In re City of Mt. Vernon*, 147 Ill. 359 (35 N. E. 533, 23 L. R. A. 807); *Hassan* v. *City of Rochester*, 67 N. Y. 528; *Essex County* v. *City of Salem*, 153 Mass. 141 (26 N. E. 431); *New Orleans* v. *Warner*, 175 U. S. 120 (20 Sup. Ct. 44). The great weight of authorities upholds this doctrine. In view of this rule, which was recognized, and the language of the opinion, we conclude that this court in *City of Big Rapids* v. *Supervisors, supra,* decided that in this State the exemption of municipal property from special assessments extended only to such property as is held for governmental purposes. The Voigt Park property was not so held by defendant.

The requirement of the law under which this assessment was made is that it must be according to the frontage upon Edison avenue. Detroit Charter 1904, pp. 182–

184. Voigt Park occupies about one-fourth of this entire frontage. It was not assessed. The entire cost was assessed against the remaining three-fourths, and not according to the frontage of each abutting lot. The law governing these assessments cannot be followed if any frontage is omitted. This park frontage abutting upon the avenue should have been assessed for this paving. It was not exempt from such assessment. To so hold in this case would not extend the rule to include the ornamental strips of land in the center of the boulevards or other highways in the city. They can in no sense be considered as abutting lots, and included within the provision of the charter—

" For the purpose of such assessment the lots and parcels of real estate situated on said street and fronting the portion thereof ordered to be improved shall constitute one local assessment district."

In the trial court plaintiff recovered for the entire amount paid by her upon this special assessment, with interest. The record shows that a duplicate assessment roll was made up and produced in evidence by defendant, showing what the amount of the assessment against plaintiff would have been had Voigt Park been assessed, and the difference between that amount and the amount actually assessed, to be $2,136.28. Defendant's contention was that this amount, with interest at 5 per cent. from February 27, 1909, the date of payment, was the amount for which plaintiff would be entitled to recover if the court held that Voigt Park should have been assessed. The correctness of this computation was not questioned by plaintiff. In that court the case was decided upon the ground that the assessment was not made according to frontage, and was wholly invalid. In this court, however, counsel for plaintiff in his oral argument stated that, if it is held that the park property should have been assessed, plaintiff only asked to recover the excess paid by her, with interest. This agreement between the parties makes further discussion relative to the question unnecessary. As already de-

cided, the park property was not exempt from this assessment, and therefore should have been included in the assessment roll.   Plaintiff had not waived any rights, and had done nothing to estop her from recovering in this case.

For the reasons stated, the judgment is, accordingly, reduced, and, the questions involved being questions of law, a judgment will be entered in this court in favor of plaintiff and against defendant for the sum of $2,136.28, with interest at 5 per cent. from February 27, 1909, to date, with costs to defendant.

BIRD, BROOKE, BLAIR, and STONE, JJ., concurred.