GERMAN LUTHERAN CHURCH SOCIETY *v.* CITY OF MT. CLEMENS.

1. MUNICIPAL CORPORATIONS—NECESSITY—IMPROVEMENTS.
   A resolution of the common council of a municipality determining the necessity for making a public improvement, such as the construction of a sewer, is necessary to the validity of the proceedings.

2. SAME—TAXATION—SEWERS AND DRAINS—SPECIAL ASSESSMENTS.
   The sole ground imposing a part or all of the cost of a public improvement upon one part of a municipality is that the part burdened with the cost receives corresponding benefits which the general public does not receive.

3. SAME—BASIS OF TAX—UNIFORMITY.
   The legislature may not authorize the governing body of a municipality to fix an arbitrary basis for an assessment to be imposed upon property without regard to benefits, nor can a property owner be charged with an assessment greater than the benefits.

4. SAME.
   Where the estimated cost of constructing a sewer ex-

ceeded the actual expense, and the city attempted to col-
lect special assessments therefor in excess of the true
cost, after sufficient money had been paid to reimburse
the city, which shared one-third of the entire expense,
the court in chancery will relieve the property owners
from paying any further demand. Act No. 546, Local Acts
1907, does not contemplate the collection of any sum
in excess of the cost of the sewer.

Appeal from Macomb; Murphy, J., presiding. Sub-
mitted April 16, 1913. (Docket No. 79.) Decided
March 26, 1914.

Bill by the German Lutheran Dreieinigkeit Church
Society and others against the city of Mt. Clemens to
vacate a special improvement tax. From a decree for
the defendant, complainants appeal. Reversed.

*Martin Crocker* (*Erskine & Lungerhausen*, of coun-
sel), for complainants.

*William T. Kelly* (*Robert F. Eldredge*, of counsel),
for defendant.

STONE, J. The complainants, by their bill of com-
plaint in this cause, seek to restrain the defendant
city from collecting that part of a special assessment
for the construction of a lateral sewer in Gibbs street,
in the city of Mt. Clemens, lying between Dickinson
avenue and Judge street, in excess of its actual cost,
and to remove the cloud caused thereby from the title
to their lands. The sewer in question had been com-
pleted at the time of the filing of the bill, and its en-
tire cost ascertained and paid. It is a small, lateral
crock sewer 734 feet long, with four catch-basins. It
is 4.71 feet deep at its beginning at Dickinson avenue,
and 7.04 feet deep at its terminus. It is alleged in the
bill, and admitted in the answer, that the total cost
of the sewer was $314.92.

The following is an extract from the annual appropriation bill of May, 1910, of the council proceedings:

"A crock sewer on Gibbs street between Dickinson avenue and Judge street, the city's share of which is estimated to be $700."

Upon that subject the common council of the city, on June 6, 1910, passed the following resolutions:

"Resolved further, that there shall be assessed for special benefits arising from the construction of said sewer upon all taxable lands and premises included in said special assessment district above established, the sum of forty-five cents per foot frontage upon said Gibbs street of said several parcels of land in said district, which said sum of forty-five cents per foot is hereby determined as being one-third of the actual cost of constructing the average crock sewer in said city at this time, and that the balance of cost of said sewer be paid by the said city of Mt. Clemens at large and out of the general sewer fund of said city.

"Resolved further, that the board of special assessors be and is hereby ordered to levy upon each lot and parcel of land abutting upon said portion of said Gibbs street lying within said special assessment district above established, the sum of thirty-five cents per foot frontage of said lot or parcel of land upon said Gibbs street, and report the same to this council with all convenient speed."

The decision of this case has been delayed owing to the condition of the record. Counsel for defendant and appellee, in his brief, uses the following language:

"May 23, 1910, the council adopted a resolution declaring its intention to construct this particular lateral sewer on Gibbs street, fixed a special assessment district consisting of the abutting land as a proposed assessment district, directed the preparation of a plat and diagram and estimate of the cost to be filed in the city clerk's office, and set June 6, 1910, as the time for the meeting of the council 'to hear and consider objections and suggestions relative to said proposed sewer and said proposed special assessment,'

and directed notice to be published. On June 6, 1910, none of the landowners or other parties interested filed or made any objections to this proposed sewer or district, and at that time the council adopted a resolution declaring that it was necessary for the proper drainage of the city, and for the public health, to construct said sewer, that the lands in the assessment district would be benefited by the construction thereof, and that such benefit would exceed in amount the proposed assessment, and determined, therefore, to build the sewer, adopted the plan and diagram filed, and directed the board of assessors to make special assessments."

Upon turning to the record to find such resolution, and not finding it there, we sent for the original return, and then found that neither the testimony nor the case as settled had been returned to this court. They have since been returned, and there is nothing in the record that shows any resolution of necessity by the council as required by the statute. This might be sufficient to dispose of the case, as such a resolution has repeatedly been held to be jurisdictional, and an essential prerequisite to further proceedings. However, as the point has not been made by the solicitor for the complainants, we have concluded to dispose of the case upon other grounds.

In 1907 the legislature enacted a local statute (Local Acts 1907, Act No. 546) entitled as follows:

"An act providing for uniform assessments for defraying a portion of the cost of the construction of sewers in the city of Mt. Clemens, Michigan.
* * * * * *
"SEC. 2. The cost of any branch, lateral or local sewer, constructed within a special district, shall be paid from the general sewer fund; but before any such branch, lateral or local sewer is constructed, the common council shall fix the limits of a special assessment district, which shall include all the taxable lands and premises touching or abutting that portion of the street, lane, alley, highway or avenue along which said branch, lateral or local sewer is to be constructed;

and in the making of such assessment, in the review and collection of the same, the common council shall conform as near as may be to the provisions of act number 215 of the public acts of the State of Michigan for the year 1895 as amended; except that, in the making of such assessments, the board of special assessors shall assess each lot or piece of land a sum of money determined by the number of feet frontage such lot or piece of land has touching or abutting that portion of the street, lane, alley, highway or avenue along which such lateral, branch or local sewer is to be constructed. The amount to be assessed for each foot so touching or abutting shall be an amount which the council shall determine from time to time, and which approximately shall be one-third of the actual cost of constructing one foot of an average lateral crock sewer. The money so collected and received by reason of such assessment shall be paid into the general sewer fund."

This assessment was divided into three equal installments, the first of which was paid by the property holders, and which, with the one-third provided by the city, has paid in full the cost of the construction of the sewer. The property holders on each side of the street were assessed 45 cents per foot frontage, and the first installment of 15 cents, together with the one-third to be paid by the city, amounted to $330.30. Notwithstanding this fact, the defendant city proposed, and was proceeding at the time of the filing of the bill of complaint, to collect the other two installments, placing the amount so collected in the general fund for use for other purposes.

It is the claim of the complainants, and does not seem to be denied by the answer, that it was the purpose of the defendant city to collect the other installments and place the amount so collected in the general sewer fund, and to use the same for other purposes than that of defraying the cost of constructing the sewer in question. In fact, there would be no necessity for the collection of any further sum to defray

the cost of constructing said sewer. It seems to be conceded that the assessments proposed would be a lien upon the lands of complainants, and that the defendant proposed to enforce such claimed lien.

The complainant German Lutheran Church Society is a religious society organized and existing under the laws of this State, and as such is exempted from general taxation. Its property is located at the corner of Gibbs street and Dickinson avenue, and it had already sewered into a main or trunk sewer on Dickinson avenue.

It is the claim of the complainants that the said local act is unconstitutional and void. If we should find that other points raised in the case are decisive of it in appellants' favor, this court will not pass upon the constitutionality of the act. *People* v. *Quider*, 172 Mich. 280-288 (137 N. W. 546).

It has been often held that the sole ground for imposing a part or all of the cost of a public improvement upon one part of a municipality is that the part burdened with the cost receives corresponding benefits, which the general public does not receive. *City of Detroit* v. *Judge of Recorder's Court*, 112 Mich. 588 (71 N. W. 149), and cases there cited.

No plan should be adopted which will result in gross inequality of taxation. The burden should be apportioned, as uniformly and equally as may be. The legislature cannot fix, or authorize the governing body of a municipality to fix, an arbitrary basis for an assessment to be imposed upon property without regard to benefits. If this be done, the principle which justifies special assessments on abutting property, namely, that it is thereby specially and peculiarly benefited, is wholly ignored. There can be no justification for any proceeding which charges the land with an assessment greater than the benefits. Cooley on Taxation (2d Ed.), p. 661; *State* v. *Pillsbury*, 82 Minn. 359 (85 N. W. 175).

Section 3212, 1 Comp. Laws (2 How. Stat. [2d Ed.] § 5734), relating to special assessments, provides as follows:

"Should any special assessment prove insufficient to pay for the improvement or work for which it was levied, and the expenses incident thereto, the council may, within the limitations prescribed for such assessments, make an additional *pro rata* assessment to supply the deficiency, *and in case a larger amount shall have been collected than was necessary, the excess shall be refunded ratably to those by whom it was paid.*"

It appears undisputed in this case that the construction of this sewer cost less than had been estimated or expected by the local authorities. The statute, above quoted, indicates that the legislature contemplated that this condition might arise.

Bearing in mind that special benefits to all those property owners in the district is the rule to be applied, it is apparent that the amount fixed by the council may not always be sufficient, and sometimes may exceed the cost. The cost of the improvement, however, ought to be the measure of the taxation and the basis of the benefit conferred.

We find nothing inconsistent with the legislation upon the subject when we compare the provisions of the local act, above quoted, with section 3212, 1 Comp. Laws (2 How. Stat. [2d Ed.] § 5734). It is true that the local act provides that the money so collected and received by reason of such assessment shall be paid into the general sewer fund. This is for the reason that the city has already paid the contract price for building the sewer; the object being to reimburse the city. We do not think that by any fair construction it can be held that the local act requires or contemplates the collection of any sum of money whatever, after the cost of the sewer has been paid, and the property owners in the assessment district have paid

their portion of the cost thereof, as provided for in the resolution establishing the assessment district. We must hold, therefore, that the complainants have paid the amount lawfully required, and that they are entitled to be relieved from any further claim or demand in the premises, and are entitled to the relief prayed for in the bill of complaint.

The decree of the court below will be reversed, and a decree entered in this court in accordance with the prayer of the bill of complaint with costs to the complainants.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.