STATE OF MICHIGAN v CITY OF DETROIT

Docket No. 63931. Submitted January 11, 1983, at Detroit.—Decided
November 21, 1983. Leave to appeal applied for.

The Air Pollution Control Commission in administrative rules
promulgated pursuant to a statutory grant of power defined the
terms "commercial location" and "manufacturing location" as
used in the Air Pollution Act to include publicly owned places
other than primary and secondary schools and places owned by
the state government and publicly owned power plants and
waste treatment and disposal facilities. Pursuant to those ad-
ministrative rules, the Air Pollution Control Commission
sought to assess annual surveillance fees with respect to vari-
ous facilities owned by the City of Detroit which had a power
generation plant, incinerator, or waste treatment plant on the
premises and with respect to the incinerator facility operated
by the Central Wayne County Sanitation Authority. The city
refused to pay the surveillance fees on the basis that the
assessment of such fees with respect to publicly owned facilities
was not authorized by statute. The city eventually paid the
surveillance fees under protest with the understanding that the
state would seek a declaratory judgment on the question of the
application of those fees to the city owned and operated facili-
ties. The sanitation authority consistently refused to pay sur-
veillance fees assessed by the authority. The State of Michigan,
the Air Pollution Control Commission and the Michigan De-
partment of Treasury brought an action for declaratory judg-
ment in Wayne Circuit Court, naming the City of Detroit as
defendant. The Air Pollution Control Division of the Wayne
County Health Department was permitted to intervene as a
plaintiff. The Central Wayne County Sanitation Authority was
permitted to intervene as a defendant. The plaintiffs and the
defendants filed motions for summary judgment. Patrick J.
Duggan, J., granted plaintiffs' motion, holding that the surveil-

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law § 241.
[2, 3] 2 Am Jur 2d, Administrative Law § 296.
[3, 6] 61A Am Jur 2d, Pollution Control § 52.
[4-6] 61A Am Jur 2d, Pollution Control § 118.

lance fees were properly assessed against the facilities owned and operated by defendants. A motion for rehearing was denied. Defendants appeal. *Held:*

1. The administrative rules promulgated by the commission were a proper exercise of the authority granted to the commission. The subject matter of the rules promulgated by the commission was within the grant of authority made by the Legislature, the rules promote the underlying legislative intent of the Air Pollution Act and the rules are not arbitrary and capricious. While it is a close question whether the Legislature intended the surveillance fee provisions of the act to apply to publicly owned facilities, it cannot be said that the construction of the language of the act adopted by the commission and implemented by its rules is clearly wrong or that a different construction of the language is plainly required. The Legislature's exemption of municipally owned solid waste disposal facilities with a capacity of greater than 50 tons per day does not evidence an intent to exempt publicly owned facilities other than those specifically described in the statutory amendment creating the exemption.

2. The Legislature's grant of authority to the commission was a sufficiently broad grant of power so as to authorize the commission to assess surveillance fees with respect to publicly owned facilities used for governmental purposes and was a proper delegation of authority to an administrative agency.

3. The surveillance fees are assessments rather than taxes.

4. The granting of summary judgment was proper, since none of the specific claims made by the defendants undermined the trial court's determination that the defendants received special benefits from the surveillance program.

5. A rational basis existed for the commission to treat facilities owned and operated by municipal corporations differently from facilities owned and operated by the State of Michigan.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION — AGENCIES.

The practical construction given to obscure statutes by administrative agencies will be given weight by the courts in construing such statutes and such constructions will not be disregarded unless clearly wrong or unless a different construction is plainly required.

2. ADMINISTRATIVE LAW — AGENCIES — ADMINISTRATIVE RULES.

The validity of rules promulgated by an agency empowered to make rules is determined by application of a three-part test: 1)

whether the rule is within the matter covered by the statute enabling the agency to make rules; 2) if so, whether the rule complies with the underlying legislative intent; and 3) if it meets the first two requirements, whether it is neither arbitrary nor capricious.

3. ENVIRONMENT — AIR POLLUTION CONTROL COMMISSION — SURVEILLANCE FEES — MUNICIPAL CORPORATIONS — ADMINISTRATIVE RULES.

The administrative rules of the Air Pollution Control Commission defining a "commercial location" to include publicly owned places in which there is an exchange of goods or services other than elementary and secondary schools and places owned by the state government and defining a "manufacturing location" to include a publicly owned place used for the generation of electricity or for the disposal or treatment of solid or liquid waste other than those owned by the state are valid in that the subject matter of those rules is within the grant of authority of the Legislature, the rules promote the legislative intent of control of air pollution through surveillance and investigation and the rules cannot be said to be arbitrary and capricious; the effect of the statutory amendment which exempts municipally owned solid waste facilities with a capacity of greater than 50 tons per day from the imposition of surveillance fee assessments by the Air Pollution Control Commission should be limited to the specific class of facilities delineated in the amendment (MCL 336.24a; MSA 14.58[14a]; 1979 AC, R 336.11[5], 336.12[1], now 1980 AACS, R 336.1103[q], 336.1113[c]; 1980 AACS, R 336.201 subds [a] and [d]).

4. ENVIRONMENT — AIR POLLUTION CONTROL COMMISSION — SURVEILLANCE FEES — MUNICIPAL CORPORATION — ADMINISTRATIVE RULES.

The Air Pollution Control Commission has statutory authority to assess air surveillance fees against governmental units; the Legislature properly delegated authority to the Air Pollution Control Commission to promulgate rules relative to the assessment of surveillance fees and granted the commission the authority to make such assessments against governmental units even where the object of the surveillance is being used for a governmental purpose (MCL 336.24a; MSA 14.58[14a]).

5. TAXATION — ASSESSMENTS — AIR POLLUTION CONTROL COMMISSION — SURVEILLANCE FEES.

The surveillance fees imposed by the Air Pollution Control Com-

mission are assessments rather than taxes (MCL 336.24a; MSA 14.58[14a]).

6. ENVIRONMENT — AIR POLLUTION CONTROL COMMISSION — SURVEIL-
LANCE FEES — MUNICIPAL CORPORATIONS.
There is a rational basis for treating facilities of municipal corporations differently from facilities owned by the state for purposes of the assessment of surveillance fees by the Air Pollution Control Commission.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *David Brockman* and *Stanley F. Pruss,* Assistants Attorney General, for the State of Michigan.

*William L. Cahalan,* Prosecuting Attorney, and *Donald A. Campbell* and *Joseph B. Klein,* Assistants Prosecuting Attorney, for the Wayne County Health Department Air Pollution Control Division.

*Sylvester Delaney,* Deputy Corporation Counsel, and *Darryl F. Alexander* and *Stuart Trager,* Assistants Corporation Counsel, for the City of Detroit.

*Berry, Hopson, Francis, Mack & Seifman* (by *Ronald E. Mack),* for the Central Wayne County Sanitation Authority.

Before: BEASLEY, P.J., and M. J. KELLY and N. J. LAMBROS,* JJ.

N. J. LAMBROS, J. Defendant, the City of Detroit, and intervening defendant, the Central Wayne County Sanitation Authority (CWCSA), appeal as of right from a summary judgment in a declaratory judgment action brought against them by the state. This appeal involves a question of first impression concerning the surveillance fees imposed

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pursuant to Michigan's Air Pollution Act, MCL 336.11 *et seq.;* MSA 14.58(1) *et seq.*

In 1965, the Air Pollution Control Commission was created to administer and carry out the provisions of the Air Pollution Act, MCL 336.13(1); MSA 14.58(3)(1). The extensive powers of the commission were enumerated in § 5 of the act, MCL 336.15; MSA 14.58(5). The commission was granted broad authority to promulgate rules to control air pollution. MCL 336.17(2); MSA 14.58(7)(2).

In § 14a of the act, the Legislature required the collection of fees to provide for the increased costs of surveillance, investigation and other activities necessary to protect the state's air and attain and maintain national air quality standards. MCL 336.24a; MSA 14.58(14a).

Based on its interpretation of the act and rules promulgated by the Air Pollution Control Commission, the state's Department of Treasury billed the City of Detroit for surveillance fees for numerous city-owned and operated facilities. These facilities include libraries, hospitals, housing units, public lighting locations, water and sewage plants, and board of health buildings. Each facility operates a power generation plant, an incinerator or a waste treatment plant. Intervening defendant CWCSA also was billed for suveillance fees for its large incinerator, which burns refuse collected in five municipalities in Wayne County. The billing began in 1975 for fees assessed by the commission in 1974.

The city has consistently refused to pay the fees based upon its claim that the fees were not authorized by statute. The Department of Treasury attempted to set off the amount of nonpayment by withholding revenue-sharing funds from the city. The city subsequently refused to turn over funds

which were withheld for state income tax purposes. An agreement was reached between the city and the state. The city paid under protest the 1974-1979 surveillance fees and the state agreed to seek the declaratory judgment which is the subject of this appeal. The CWCSA has consistently refused to pay the surveillance fees assessed by the commission.

In 1976, the state sought a declaratory judgment in circuit court. The Wayne County Health Department, which administers the surveillance program in Wayne County, joined the action as an intervening plaintiff. The CWCSA, alleging that its legal position was essentially the same as the city's, joined the action as an intervening defendant. Both sides moved for summary judgment. The state's motion was granted.

The interpretation of § 14a of the act is the central issue on appeal. Before its amendment in 1981, this section provided, in part:

"[T]he commission shall levy an annual surveillance fee based on the commission's estimate of the surveillance cost to the commission or a local agency as provided for in subsection (2) for each manufacturing or commercial location, that occupies more than 3,000 square feet of floor space. A manufacturing or commercial location occupying under 3,000 square feet of floor space that produces contaminants only through the process of heating the premises of the business shall not be subject to a surveillance fee."

The 1981 amendment to the act will be discussed *infra.*

The construction of a statute by an agency charged with administering it will not be disregarded unless it is clearly wrong or a different construction is plainly required. *Roosevelt Oil Co v*

*Secretary of State,* 339 Mich 679, 694; 64 NW2d 582 (1954). Courts must give weight to the practical construction given to obscure statutes by administrative officers. *Roosevelt, supra,* p 693.

The plaintiffs base their main argument on rules promulgated by the Air Pollution Control Commission to define "commercial" and "manufacturing" as used in § 14a. These rules (see 1979 AC, R 336.11[5], 336.12[2], now 1980 AACS, R 336.1103[q], 336.1113[c], and 1980 AACS, R 336.201, subds [a] and [d]) define commercial locations to include publicly owned places in which there is an exchange of goods or services other than elementary and secondary schools and places owned by the state government. Manufacturing locations may also include publicly owned power generating or waste disposal facilities other than those owned by the state. The rules were first promulgated in 1967. In determining the validity of a rule promulgated by an administrative agency pursuant to a statutory grant of rule-making authority, this Court must consider: (1) whether the subject of the rule is within the grant of authority made by the Legislature; (2) whether the rule promotes the underlying legislative intent; and (3) whether the rule is arbitrary or capricious. *Jackson v Secretary of State,* 105 Mich App 132, 138; 306 NW2d 422 (1981).

The Air Pollution Control Commission is granted authority to promulgate rules in a large number of specific areas, MCL 336.17; MSA 14.58(7). In § 14a (the section concerning surveillance fees), the commission is directed to "promulgate additional rules which may be necessary or required to implement this section".

We believe the tests articulated by this Court in *Jackson, supra,* have been met by the commission.

The commission was granted authority to promulgate additional rules necessary to implement the levy of surveillance fees. This was accomplished in part by the defining of the words "commercial" and "manufacturing". Any definitions of those terms which comport with the announced legislative goal of providing "for increased surveillance, investigation, and other activities necessary to provide greater protection of air of this state and for attainment and maintenance of national ambient air quality standards" (MCL 336.14a[1]), in the absence of evidence that such definitions are arbitrary or capricious, should be allowed to stand. No such evidence has been presented to this tribunal. Had the Legislature intended to limit the rule-making authority of the commission in this area, it could easily have done so. Indeed, it did so in 1981 with the adoption of 1981 PA 106 which specifically exempted "municipally owned solid waste disposal facilities with a capacity of greater than 50 tons a day" from the surveillance fee levied pursuant to § 14a.

Admittedly, the question raised by the instant appeal is close. Section 14a does contain language from which it could be argued that only those commercial or manufacturing facilities which are privately owned or operated should be subject to the surveillance fees. Examples include references to "the premises of the business", "plant location", and "major manufacturing component and commercial enterprise". Nevertheless, we are not persuaded that the action of the commission violates the tenets set forth in *Jackson, supra.* Moreover, disputes of this nature are more properly presented to the Legislature for resolution than to the courts. The Legislature responded in 1981 with a rather narrow amendment to the statute. We can-

not now go beyond the expressed intent of the Legislature.

Defendants also claim that the commission did not have specific statutory authority to assess air surveillance fees against governmental units. We disagree. Section 14a clearly directs the commission to promulgate rules which "may be necessary or required to implement" the provisions concerning surveillance fees. The commission is also granted broad authority to promulgate rules in § 7 of the act. See MCL 336.17(2); MSA 14.58(7)(2). We also reject the claim that the Legislature improperly delegated its authority to decide who should pay air pollution surveillance fees. We believe that the statute designated the objects of surveillance fees with such particularity as was consistent with public policy and the rights of all concerned. The Legislature had made its policy clearly apparent. See *G F Redmond & Co v Michigan Securities Comm,* 222 Mich 1; 192 NW 688 (1923); *Argo Oil Corp v Atwood,* 274 Mich 47; 264 NW 285 (1935).

We reject defendants' claim that they are exempt from assessments because they use their land for governmental purposes. No such exemption appears in the statute. In making this claim, defendants rely on the Supreme Court's decision in *Detroit v Oakland County,* 353 Mich 609; 92 NW2d 47 (1958). In that case, the Court held that, whenever a taxing agency seeks to impose a tax on property owned by a governmental unit and used for governmental purposes, it must be able to point to legislative or constitutional authority for doing so. *Detroit, supra,* p 614. In the present case, such legislative authority exists even though it is authority the Legislature delegated to the Air Pollution Control Commission. See also *Big Rapids v Mecosta County Supervisors,* 99 Mich 351, 353-354; 58 NW 358 (1894).

Defendants also claim that the trial court erred by finding that the surveillance fees are assessments, rather than taxes. We believe that the trial court properly applied the standards set forth in *Dukesherer Farms, Inc v Director of the Dep't of Agriculture (After Remand),* 405 Mich 1, 15-23; 274 NW2d 877 (1979), in deciding that the fees were assessments and not taxes. Summary judgment on this issue was proper because none of the specific claims made by the defendants (assuming those claims were supported by evidence) undermined the reasoning used by the trial judge to find that the defendants received special benefits from the operation of the surveillance program.

Defendants also claim that the assessment of fees against their facilities was arbitrary and capricious. This Court has already rejected that claim in considering the validity of the rules promulgated by the commission under the act. A rational basis existed for treating city and state facilities differently.

Affirmed. No costs, a public question.