*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SPECTRUM HEALTH HOSPITALS,

        Plaintiff-Appellant,

v

MICHIGAN ASSIGNED CLAIMS PLAN,
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, and JOHN DOE
INSURANCE COMPANY,

        Defendants-Appellees.

FOR PUBLICATION
September 24, 2019
9:05 a.m.

No. 343563
Kent Circuit Court
LC No. 17-007964-NF

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

The Michigan Assigned Claims Plan (MACP)/Michigan Automobile Insurance Placement Facility (MAIPF) rejected Spectrum Health Hospital's claim for assignment because the injured party did not sign the assignment application. The purpose of the MACP is to ensure prompt coverage for persons injured in motor vehicle accidents when coverage cannot be found or is unavailable. To achieve that end, the MACP/MAIPF has extremely limited authority to deny claims for assignment—it may only deny an "obviously ineligible" claim. The absence of a signature does not meet that threshold. We reverse the award of summary disposition in the MACP/MAIPF's favor and remand for entry of summary disposition in favor of Spectrum.

## I. BACKGROUND

Robin Benoit was seriously injured on August 30, 2016, while a passenger in a vehicle involved in a single-car motor vehicle accident. Spectrum Health provided more than $129,000 in services to Benoit from August 30 through September 19, 2016. Benoit was not covered by any no-fault insurance policy. Upon Benoit's admission, Spectrum secured a "verbal consent" witnessed by two staff members for a general assignment of rights; however, Benoit was "unable to sign." The hospital did not secure a more specific assignment to apply to the Michigan Assigned Claims Plan (MACP)/Michigan Automobile Insurance Placement Facility (MAIPF) on

-1-

Benoit's behalf. Spectrum allegedly misplaced the general assignment, then searched high and low for Benoit, but to no avail.

On August 10, 2017, almost a year after the accident, Spectrum filed an "application for personal injury protection [PIP] benefits" with the MACP/MAIPF. Spectrum's agent signed as the "preparer" and the signature line for the "injured Person or Representative" was left blank. Spectrum directed the MACP/MAIPF to the police report, which indicated that the driver of the vehicle did not have no-fault insurance. The preparer answered "unknown" to several application questions, including the names of persons with whom Benoit lived at the time of the accident and any vehicles owned by Benoit at that time. The preparer also answered "unknown" to the questions: "At the time of the accident, did you have any auto insurance? If yes, list Name of Automobile Insurance Company & Policy Number," and "Are you filing this claim because there is a dispute between two or more insurance companies for your [PIP] coverage?" The application did include the address and phone number provided by Benoit in the hospital and her Medicaid policy number, as well as the vehicle operator's driver's license number. The preparer did not know if there was "automobile insurance in effect for this vehicle on the date of the accident" or whether "the driver [had] automobile insurance in effect on the date of the accident."

Spectrum provided the MACP/MAIPF a "list of steps taken to find Auto Insurance" along with the application. It described Spectrum's attempts to contact Benoit by phone and mail, and to uncover additional contact information for its patient by searching various databases.

On August 14, 2017, the MACP/MAIPF sent Spectrum a generic form letter denying the application, stating:

> We have received the application for benefits through the [MACP], which you submitted on 08/10/2017. After careful review it has been determined that your application is ineligible for assignment under Michigan No Fault Act. If you have any questions regarding this determination please contact a representative for the [MACP], operated by the [MAIPF].

Spectrum then hired a private investigator to continue the search for Benoit. The investigator learned that the address and phone number given by Benoit at the hospital actually belonged to a personal friend who refused to speak to the investigator. The investigator uncovered another address for Benoit, which was a vacant lot. Benoit's former landlord had no forwarding information. On August 25, 2017, at 2:25 p.m., the investigator sent Benoit a private message on Facebook and she telephoned him five minutes later. Benoit indicated that at the time of the accident, her ex-boyfriend was driving his personal vehicle, which he had neither registered nor insured. Benoit confirmed that she did not own a vehicle, have no-fault insurance, or live with anyone who carried no-fault insurance at the time of the accident.

On August 28, 2017, Benoit met with the investigator in person and signed an "assignment of rights, benefits and causes of action" to permit Spectrum to seek PIP benefits on her behalf. Spectrum forwarded the assignment to the MACP/MAIPF by fax on August 30, 2017, the final day to timely file a claim. The cover sheet informed the MACP/MAIPF that

Spectrum had provided medical treatment to Benoit following her motor vehicle accident and that Spectrum had filed an application for assignment on August 10. Spectrum requested, "Please assign the claim, and notify us as to the assigned carrier."

The MACP/MAIPF immediately notified Spectrum that it was "unable to process the claim you have submitted on behalf of" Benoit and that it "require[d] additional information in order to move forward with [its] initial eligibility determination." The MACP/MAIPF stated that the matter had been referred to its "legal counsel for further handling which may include, but is not limited to, examinations under oath of the appropriate individuals."

That same day, Spectrum filed suit for mandamus and declaratory relief, asserting that the MACP/MAIPF had a clear legal and ministerial duty to assign the claim to a no-fault insurer under MCL 500.3174, which, at the time of Spectrum's application and suit, provided:

> A person claiming through the [MACP] shall *notify* the [MAIPF] of his or her claim within the time that would have been allowed for filing an action for [PIP] benefits if identifiable coverage applicable to the claim had been in effect. The [MAIPF] shall promptly assign the claim in accordance with the plan and notify the claimant of the identity and address of the insurer to which the claim is assigned. . . . [MCL 500.3174, as amended by 2012 PA 204 (emphasis added).][1]

The MACP/MAIPF bucked discovery attempts, contending that Spectrum's application for assignment was facially deficient as Spectrum made inadequate efforts before filing to determine whether Benoit had available insurance coverage. It announced its intent to file a motion for summary disposition "to draw a line in the sand to prevent these efforts at obtaining assignment with little more than the most bare of information." A subsequent summary disposition motion added that Spectrum did not have an independent right to assert a claim in its own name after *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017).[2] The MACP/MAIPF further contended that the application was invalid because although Spectrum signed it as the preparer, no one signed as the claimant or claimant's representative as required by the plan's internal operating procedures. Specifically, Michigan Assigned Claims Plan, § 5.1(A)(1)(a)[3] provides that "[a] claim for [PIP] benefits under the Plan must be made on an application prescribed by the MAIPF" and that the application "must be complete and signed by the claimant," i.e., by "a person suffering accidental bodily injury arising

---

[1] The statute was amended by 2019 PA 21, effective June 11, 2019.

[2] The Michigan Legislature "overruled" *Covenant* by amending MCL 500.3112 to give healthcare providers the right to file a direct claim or cause of action against an insurer for reimbursement for services provided to an injured person. See 2019 PA 21, effective June 11, 2019. As such, the MACP/MAIPF's argument in this regard is no longer valid.

[3] The "Michigan Assigned Claims Plan" is available at <https://www.michacp.org/documents/MACP-Plan-of-Ops-Final.pdf> (accessed September 17, 2019).

out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle in this state."

Spectrum replied that it was entitled to summary disposition because the MACP/MAIPF was only authorized to reject an application if from the outset the claim was obviously ineligible under the no-fault act. The standard did not require the applicant to conclusively prove that no insurance was available, only that it made a good-faith effort to determine whether insurance was available. With its response, Spectrum included an affidavit from Benoit, avowing that she was merely a passenger in the vehicle involved in the accident and had no ownership or control over it. "[T]o the best of [her] knowledge, neither the vehicle's driver nor the vehicle itself was covered by a no-fault policy at the time of the accident," Benoit asserted. Benoit continued that she did not have a no-fault policy or reside with relatives maintaining policies at that time.

At the hearing on the counter motions for summary disposition, the MACP/MAIPF agreed that it now had sufficient information that Benoit did not have insurance available to her at the time of the accident. However, it continued to insist that the application was invalid at its inception based on the absence of Benoit's signature as claimant.

The circuit court agreed with the MACP/MAIPF and summarily dismissed Spectrum's action. The court acknowledged that Spectrum secured an assignment from Benoit after it filed its application. However, the court reasoned, the focus was on the application and whether it was valid when originally filed. The plan rules required that the application be signed by the claimant or her representative and Spectrum did not sign in that capacity. And Spectrum did not file a new or amended application after locating Benoit. The court concluded, "I'm constrained to agree that while it's a technical point, the law is full of technicalities, and in this case, the statute requires a person entitled to claim because of accidental bodily injury to file the request for the [MACP] to assign a carrier, and that person did not do so." The application was therefore fatally "defective," the court ruled.

The circuit court denied Spectrum's subsequent motion for reconsideration. Spectrum now appeals.

## II. STANDARD OF REVIEW

We review de novo a circuit court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Summary disposition is appropriate under subsection (C)(10) "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In reviewing such motions, we "consider[] the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

We also review de novo underlying issues of statutory interpretation. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012). The primary goal of statutory interpretation is to discern the intent of the Legislature. *Id*. The best indicator of the Legislature's intent is a plain reading of the statutory language. *Id*. at 205-206. "If the statutory language is unambiguous, we presume that the Legislature intended the meaning that it clearly expressed, and further construction is neither required nor permitted." *Id*. at 206.

### III. GUIDING LEGAL PRINCIPLES

In 1973, the Legislature enacted the no-fault insurance act, MCL 500.3101 *et seq.*, "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). It established the no-fault scheme, in part, to rectify problems with the tort-based compensation scheme, which frequently "denied benefits to a high percentage of motor vehicle accident victims." *Id.* at 579.

To achieve its goals, the Legislature required the "owner or registrant of a motor vehicle required to be registered in this state" in relevant part to purchase PIP insurance to cover injuries to persons caused by motor vehicles. MCL 500.3101(1). The Legislature provided that the policies required under MCL 500.3101(1) must cover more than just the named insured; policies must also cover injuries incurred in motor vehicle accidents by the named individual's spouse and any relative domiciled in the same household. MCL 500.3114(1). When an injured person is not covered by his or her own insurance policy or a policy owned by a relative, the Legislature provided that the insurers of the various vehicles involved or occupied during the accident, or the insurers of persons operating such vehicles, must cover the loss. See MCL 500.3114(2)-(5); MCL 500.3115. Even where there does not appear to be any applicable PIP coverage, the Legislature provided that an injured person could obtain PIP benefits through the MACP. See MCL 500.3172(1). All self-insurers or insurers writing insurance as provided by the no-fault insurance act are required to participate in the MACP, with the associated costs being "allocated fairly among insurers and self-insurers." MCL 500.3171(2). In this way, the Legislature ensured that every person injured in a motor vehicle accident would have access to PIP benefits unless one of the limited exclusions in the no-fault act apply, and the losses suffered by uninsured persons injured in motor vehicle accidents could be indirectly passed on to the owners and registrants of motor vehicles through insurance premiums.

The Legislature initially required the Secretary of State to "organize and maintain" the MACP/MAIPF. See 1972 PA 345. It further authorized the Secretary of State to "promulgate rules to implement the facility and plan." MCL 500.3171, as enacted by 1972 PA 345. In 2012, the Legislature shifted the obligation to adopt and maintain the MACP from the Secretary of State to the MAIPF. MCL 500.3171(1), as amended 2012 PA 204. The Legislature originally created the MAIPF to provide no-fault insurance to any person who was unable to obtain insurance through ordinary means. See MCL 500.3301. The MAIPF is not a state agency; it is a "nonprofit organization of insurer members." MCL 500.134(6)(d). Therefore, it is not subject to the rules governing state agencies, such as the Freedom of Information Act. MCL 500.134(4). After the passage of 2012 PA 204, the insurers tasked with covering losses under the MACP indirectly controlled the administration of the MACP through their control of the MAIPF. MCL 500.3310 (establishing a board of governors to govern the MAIPF and providing that seven of

the 11 governors were to be elected as provided in the plan of operation and four were to be selected by the insurance commissioner).

Although the Legislature authorized the MAIPF to establish its own MACP, MCL 500.3171(2), the Legislature did not authorize the MAIPF to establish eligibility criteria. Rather, MCL 500.3172(1) provided the eligibility criteria for the MACP:

> A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain [PIP] benefits through the [MACP] if no [PIP] is applicable to the injury, no [PIP] applicable to the injury can be identified, the [PIP] applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable [PIP] applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. . . . [MCL 500.3172(1), as amended 2012 PA 204.]

The phrase a "person entitled to claim" refers to a person who is entitled to claim PIP benefits under the no-fault act. *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 558-559; 909 NW2d 495 (2017). And such a person may claim against the MACP when any of the four following conditions are true: "(1) no [PIP] is applicable to the injury, (2) no [PIP] applicable to the injury can be identified, (3) the applicable insurance cannot be ascertained due to a dispute among insurers, or (4) the only applicable insurance is inadequate due to financial inability." *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 170; 909 NW2d 38 (2017). The Legislature also disqualified some persons from coverage under the MACP. See MCL 500.3173 (stating that a person who falls within a limitation or exclusion under MCL 500.3105 through MCL 500.3116 is disqualified from receiving benefits under the MACP as well).

In addition to establishing eligibility criteria and disqualifying factors, the Legislature provided a framework for the processing, timing, and review of claims under the MACP. The Legislature stated that a person who claims PIP benefits through the MACP must notify the MAIPF of his or her claim within the time limit for filing a PIP claim with an insurer: "A person claiming through the [MACP] shall notify the [MAIPF] of his or her claim within the time that would have been allowed for filing an action for [PIP] benefits if identifiable coverage applicable to the claim had been in effect." MCL 500.3174, as amended by 2012 PA 204. Once the person notifies the MAIPF of his or her claim, it must "promptly assign the claim in accordance with the plan and notify the claimant of the identity and address of the insurer to which the claim is assigned." *Id*. Before assigning the claim to a member insurer, however, the MAIPF must "make an initial determination of a claimant's eligibility for benefits under the MACP and shall

deny an obviously ineligible claim." MCL 500.3173a(1), as enacted by 2012 PA 204.[4] The MAIPF must notify the claimant of the reasons for denial promptly in writing. *Id*.

## IV. NOTICE

Spectrum gave the MACP/MAIPF the notice required under MCL 500.3174. Spectrum filed the application for assignment within one year as required by MCL 500.3145. The claim described in the August 10, 2017 application was not "obviously ineligible" for assignment as contemplated in MCL 500.3173a(1). MCL 500.3172(1) provides that a claim is eligible for assignment when "no [PIP] applicable to the injury can be identified." By indicating that it was "unknown" to Spectrum whether Benoit, her resident relatives, the driver, or the involved vehicle possessed a no-fault policy, Spectrum communicated that applicable PIP benefits could not be identified. The MACP/MAIPF was then required by MCL 500.3174 to promptly assign the claim.

The MACP/MAIPF did not promptly assign the claim. Indeed, it did not even comply with MCL 500.3173a(1) in notifying Spectrum of its denial. The form letter did not cite the reasons for rejection.

By the August 30, 2017 deadline for providing notice of its claim, Spectrum definitively learned that the claim was eligible for assignment under the first condition of MCL 500.3172(1): there was "no [PIP] . . . applicable to the injury." Spectrum had located Benoit and confirmed that no no-fault insurance policy covered her injury. Benoit did not own a car or possess insurance, she was not domiciled with insured relatives, and her ex-boyfriend, the driver, had neither registered nor insured his vehicle. Spectrum then forwarded Benoit's assignment of rights to the MACP/MAIPF.

Spectrum notified the MACP/MAIPF of the grounds supporting eligibility and the right to assignment by also filing suit on August 30. This Court implicitly held in *Mendelson Orthopedics PC v Everest Nat'l Ins Co*, ___ Mich App ___; ___ NW2d ___ (Docket No. 341013, 2019), slip op at 6-8, that a claimant can provide timely notice as required by MCL 500.3174 and MCL 500.3145(1) by filing a lawsuit. Spectrum's August 30, 2017 complaint listed the amount of the claim, described that Benoit did not maintain a no-fault insurance policy and was not domiciled with an insured relative, and indicated that the sole involved vehicle was not insured. Even if the earlier notice failed, upon receiving notice of the lawsuit, Spectrum's claim could not be deemed "obviously ineligible" and the MACP/MAIPF was duty-bound to assign it to an insurer.

## V. SIGNATURE REQUIREMENT

The MACP/MAIPF continues to argue, however, that Spectrum's application was "obviously ineligible" for assignment because its rules mandated that Benoit or her

---

[4] The passage of 2019 PA 21, effective June 11, 2019, added several requirements to MCL 500.3173a, which are not applicable to this 2017 case.

representative sign the application. The MACP/MAIPF contends that the claim remained "obviously ineligible" because Spectrum never submitted an amended application with a signature for the claimant or her representative.

We start by noting that nothing in the no-fault act requires a claimant to file a claim with the MACP/MAIPF on a form application or through communication signed by the claimant. These requirements come entirely from the "Michigan Assigned Claims Plan" "adopt[ed], implement[ed] and maintain[ed]" by the MAIPF. Michigan Assigned Claims Plan, § 1. Section 5.1(A) of the Plan provides, "A claim for [PIP] benefits under the [MACP] must be made on an application prescribed by the MAIPF." The MAIPF requires that the application "be complete and signed by the claimant." Michigan Assigned Claims Plan, § 5.1(A)(1)(a). The application also "must be accompanied by reasonable proof of loss, and documentation supporting that due diligence was exercised to establish the claimant is entitled to claim benefits through the [MACP]." Michigan Assigned Claims Plan, § 5.1(B)(1).

Mandating strict adherence to the minutiae of these notice provisions would be inconsistent with Michigan law. Even with the notice provisions enacted by our Legislature in the no-fault act, substantial compliance that fulfills the purpose of the statute is sufficient to preserve a claim. *Perkovich v Zurich American Ins Co*, 500 Mich 44, 52; 893 NW2d 322 (2017). The purpose of notice under MCL 500.3145(1) is simply to convey "the name and address of the claimant and . . . the name of the person injured and the time, place and nature of the injury." *Perkovich*, 500 Mich at 53. Given this purpose, the Supreme Court found adequate notice where the injured person never notified his insurer of the accident, but the healthcare provider submitted its bills for reimbursement directly to the insurer. *Id*. at 47-48. The notice provided under MCL 500.3145(1) need not even be in writing. *Linden v Citizens Ins Co of America*, 308 Mich App 89, 95; 862 NW2d 438 (2014).

Ultimately, the MACP/MAIPF has only those rulemaking powers conveyed to it by the Legislature. See *Consumers Power Co v Public Serv Comm*, 460 Mich 148, 155-156; 596 NW2d 126 (1999). The MACP/MAIPF's powers must derive from MCL 500.3171 to MCL 500.3179. The Legislature authorized the MAIPF's board of governors to adopt an MACP. MCL 500.3171(3). However, the authority to adopt a plan does not grant the authority to establish rules governing the processing, timing, and review of claims under the MACP; those requirements are enumerated by statute. *Jackson v Secretary of State*, 105 Mich App 132, 138-140; 306 NW2d 422 (1981). While the Legislature subsequently enacted MCL 500.3173a, giving the Secretary of State and then the MAIPF the limited authority to deny claims that are "obviously ineligible," the Legislature did not substantively alter the remainder of the no-fault act to expand the MAIPF's authority. Under the act, notice is "reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). As our Supreme Court has stated in an analogous context, an insurer cannot vitiate its statutory duty to pay benefits in a timely fashion through a contractually agreed upon condition precedent; rather, once it receives reasonable proof of the fact and amount of loss sustained, the insurer must comply with its statutory duty to pay. See *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 600; 648 NW2d 591 (2002). Similarly, once the MAIPF receives reasonable proof of the fact and amount of loss sustained by a claimant eligible to claim benefits as stated in MCL 500.3172(1), it must "promptly assign the claim in accordance with the plan." MCL 500.3174.

Contrary to the MACP/MAIPF's contention, MCL 500.3175 did not grant it authority to impose filing requirements beyond those provided in the statutes. MCL 500.3175 includes a list of elements that the MAIPF was required to incorporate into the MACP when power transferred to the MAIPF from the Secretary of State. The statutory provisions address the transfer of claims already assigned or filed under the Secretary of State's plan to the MAIPF's plan and the allocation of costs during the crossover period. The purpose of the statute was to set the start date for filing claims with the new MACP, not to confer additional rulemaking authority. The existence of similar filing requirements in the administrative rules promulgated by the Secretary of State under the former MACP also does not control the outcome here. The fact that no court was asked to invalidate the old administrative rule requiring a signed application is not dispositive and does not establish that that the Secretary of State had the statutory authority to promulgate the rule and deny claims for noncompliance.

The MACP/MAIPF is tasked only with making the initial determination of eligibility of a claim and may only deny a claim if it is "obviously ineligible." MCL 500.3173a(1). Eligibility is determined by the conditions outlined in MCL 500.3172(1), not by the form in which the notice is given. The MACP/MAIPF could request that the claimant amend the notice to comply with its form application to make its tasks more manageable, but it could not declare the claim to be obviously ineligible based on a minor nonconformity. As Spectrum's claim was not "obviously ineligible," the MACP/MAIPF was required to assign it to a member insurer.

As the MACP/MAIPF has conceded that the documentation presented by Spectrum during this suit supports assignment of the claim to a member insurer, there is no ground to remand this matter for further consideration. Accordingly, we reverse the award of summary disposition in the MACP/MAIPF's favor and remand for entry of summary disposition in favor of Spectrum. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly